# EXHIBIT A

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Jesse J. Savage, M.D., Ph.D. v. Indiana University Health, Inc.

| | |
|---|---|
| Case Number | 49D01-2505-CE-024396 |
| Court | Marion Superior Court 1<br>Commercial Court (Provisional) |
| Type | CE - Commercial Court Eligible |
| Filed | 05/22/2025 |
| Status | 05/22/2025 , Pending  (active) |

### Parties to the Case

Defendant  Indiana University Health, Inc.

<u>Attorney</u>
Bonnie Lee Martin
*#2024818, Lead, Retained*

300 N Meridian ST
STE 2700
Indianapolis, IN 46204
317-916-1300(W)

<u>Attorney</u>
David Richard Kuhnz
*#2999049, Retained*

300 N Meridian ST
STE 2700
Indianapolis, IN 46204
317-437-5536(W)

Plaintiff      Savage, M.D., Ph.D., Jesse J.

<u>Attorney</u>
Matthew R Gutwein
*#1641449, Lead, Retained*

3646 N. Washington Blvd.
Indianapolis, IN 46205
317-920-0400(W)

<u>Attorney</u>
Alexander James Pantos
*#3692553, Retained*

DeLaney & DeLaney, LLC
3646 N. Washington Blvd
Indianapolis, IN 46205
463-234-7334(W)

### Chronological Case Summary

| | |
|---|---|
| 05/22/2025 | **Case Opened as a New Filing** |

| | |
|---|---|
| 05/22/2025 | **Complaint/Equivalent Pleading Filed** |

Complaint for Damages, Injunctive Relief and Demand for Jury Trial

| Filed By: | Savage, M.D., Ph.D., Jesse J. |
|---|---|
| File Stamp: | 05/22/2025 |

| | |
|---|---|
| 05/22/2025 | **Subpoena/Summons Filed** |

Summons to Indiana University Health, Inc.

| Filed By: | Savage, M.D., Ph.D., Jesse J. |
|---|---|
| File Stamp: | 05/22/2025 |

| | |
|---|---|
| 05/22/2025 | **Appearance Filed** |

Appearance of Matthew R. Gutwein and Alexander J. Pantos

| For Party: | Savage, M.D., Ph.D., Jesse J. |
|---|---|
| File Stamp: | 05/22/2025 |

| 05/22/2025 | **Commercial Court Identifying Notice** | |
| | Plaintiff's Notice Identifying Commercial Court | |
| | Filed By: | Savage, M.D., Ph.D., Jesse J. |
| | File Stamp: | 05/22/2025 |

| 05/29/2025 | **Certificate of Issuance of Summons** | |
| | Return of Service to Indiana University Health, Inc. | |
| | Filed By: | Savage, M.D., Ph.D., Jesse J. |
| | File Stamp: | 05/29/2025 |

| 06/03/2025 | **Motion Filed** | |
| | Motion for Initial Case Management Conference | |
| | Filed By: | Savage, M.D., Ph.D., Jesse J. |
| | File Stamp: | 06/03/2025 |

| 06/13/2025 | **Hearing Scheduling Activity** | |
| | Status Conference scheduled for 07/10/2025 at 11:30 AM. | |

| 06/13/2025 | **Video Hearing Information** | |
| | Your court date will begin by calling 1-844-992-4726 and entering the meeting number (2334 142 3693). You may also join by clicking the following link: https://mscourts.webex.com/meet/msc-cr-d01, or by going to WebEx.com and entering the meeting number: (2334 142 3693). | |

| 06/13/2025 | **Notice Issued** | |
| | Your court date will begin by calling 1-844-992-4726 and entering the meeting number (2334 142 3693). You may also join by clicking the following link: https://mscourts.webex.com/meet/msc-cr-d01, or by going to WebEx.com and entering the meeting number: (2334 142 3693). | |

| 06/13/2025 | **Order Issued** | |
| | Judicial Officer: | Klineman, Christina R |
| | Order Signed: | 06/13/2025 |

| 06/13/2025 | **Appearance Filed** | |
| | Appearance of Bonnie Martin and David Kuhnz | |
| | For Party: | Indiana University Health, Inc. |
| | File Stamp: | 06/13/2025 |

| 06/13/2025 | **Notice Filed** | |
| | Notice of Initial Enlargement of Time | |
| | Filed By: | Indiana University Health, Inc. |
| | File Stamp: | 06/13/2025 |

| 06/14/2025 | **Automated ENotice Issued to Parties** | |
| | Hearing Scheduling Activity ---- 6/13/2025 : Matthew R Gutwein Video Hearing Information ---- 6/13/2025 : Matthew R Gutwein Notice Issued ---- 6/13/2025 : Matthew R Gutwein Order Issued ---- 6/13/2025 : Matthew R Gutwein | |

| 07/10/2025 | **Status Conference** | |
| | Session: | |
| | 07/10/2025 11:30 AM, Judicial Officer: Klineman, Christina R | |

## Financial Information

\* Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding balances shown, please contact the Clerk's Office.

**Savage, M.D., Ph.D., Jesse J.**
Plaintiff

Balance Due (as of 06/26/2025)
**0.00**

Charge Summary

| Description | Amount | Credit | Payment |
|---|---|---|---|
| Court Costs and Filing Fees | 232.00 | 0.00 | 232.00 |

Transaction Summary

| Date | Description | Amount |
|---|---|---|
| 05/22/2025 | Transaction Assessment | 232.00 |
| 05/22/2025 | Electronic Payment | (232.00) |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO: |

| | |
|---|---|
| JESSE J. SAVAGE, M.D., Ph.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INDIANA UNIVERSITY | ) |
| HEALTH, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Jesse. J. Savage, M.D., Ph.D. ("Dr. Savage"), by counsel, files this Complaint for Damages, Injunctive Relief and Demand for Jury Trial against Defendant Indiana University Health, Inc. ("IU Health").

## I. INTRODUCTION

1. Dr. Savage is a neurosurgeon. From 2015 to 2024, Dr. Savage was employed by Indiana University Health Care Associates, Inc. ("IUHP").

2. On May 1, 2024, Dr. Savage resigned from IUHP to pursue other job offers. Following his resignation, IU Health damaged Dr. Savage's professional reputation by providing prejudicial and misleading information to Dr. Savage's prospective employers and to licensing entities, knowing that the information it communicated to third parties would hurt Dr. Savage's ability to get a new job.

3. Prior to Dr. Savage's resignation, IU Health received a year-old, anonymous and uncorroborated allegation that Dr. Savage may have been intoxicated while performing surgery.

1

In violation of IU Health's own policies, IU Health made no effort to investigate this allegation or to test Dr. Savage for impairment, despite Dr. Savage's repeated requests for IU Health to do so. IU Health's leadership confirmed that they did not believe the allegation to be true.

4.      Nevertheless, without any reasonable basis, IU Health forced Dr. Savage to participate in an intake evaluation at the Indiana State Medical Association ("ISMA"). Dr. Savage completed the evaluation. The ISMA placed no requirements on Dr. Savage. IU Health, however, without justification, informed Dr. Savage's prospective employers and licensing entities that Dr. Savage "may have had actions at IU Health related to health issues and ensuring [Dr. Savage] could practice safely and competently," and that he "agreed to undergo an intake evaluation from the [ISMA]. Upon information and belief, ISMA made certain recommendations."

5.      IU Health's statements are misleading and damaging because the only reason Dr. Savage participated in an ISMA intake evaluation is that IU Health, without any reasonable factual basis, forced him to do so by threatening to suspend his privileges if he declined. IU Health also knew that the ISMA made no determination that Dr. Savage suffered from any health issue, much less a health issue that required a recommendation.

6.      IU Health's statements created the false impression that Dr. Savage participated in the ISMA intake process because IU Health had valid concerns that Dr. Savage suffered from health issues and that the ISMA's supposed recommendations confirmed IU Health's concerns. IU Health knew that Dr. Savage had job offers from other health systems. IU Health intended its misleading statements to interfere with Dr. Savage's job offers and prospective business relationships with other health systems. IU Health continues to repeat its false, misleading, and damaging statements.

2

## II.     PARTIES, JURISDICTION, AND VENUE

7.     Dr. Savage is a citizen of the State of Indiana and formerly a resident of Indianapolis, Indiana. Dr. Savage currently resides in the State of California.

8.     Indiana University Health, Inc. ("IU Health") is a nonprofit domestic corporation with its principal place of business at 340 West 10th Street, Indianapolis, Indiana 46202.

9.     Pursuant to Rule 2 of the Commercial Court Rules, this case is eligible for assignment to the Commercial Court Docket.

10.     Defendant and its parents, subsidiaries, and affiliates have offices in multiple locations in Indiana and regularly conduct business in Marion County, Indiana.

11.     This Court has jurisdiction over this matter because IU Health regularly conducts business in Marion County, Indiana, and the events giving rise to the claims occurred in Marion County, Indiana.

## II.     FACTUAL ALLEGATIONS

12.     Dr. Savage incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

13.     From 2015 to May 1, 2024, Dr. Savage was continuously employed by Indiana University Health Care Associates, Inc., d/b/a IU Health Physicians ("IUHP") or its predecessor entities, held a faculty appointment at the Indiana University School of Medicine ("IUSM"), and held medical staff privileges at IU Health hospitals.

14.     At all times during his tenure with IUHP, IUSM and IU Health, Dr. Savage was a member of the medical staff in good standing.

15.     Dr. Savage's clinical privileges were never denied, suspended, or revoked, nor was he ever placed on probation, the subject of an investigation, or subject to any disciplinary action.

15.     Dr. Savage is a founding member of IU Health Physicians Neurosurgery Department and was instrumental in the Department's inception. Along with clinical appointments within the IU School of Medicine Departments of Neurological Surgery and Otolaryngology, Dr. Savage served as Medical Director of Cerebrovascular Surgery, Associate Program Director of the Neurosurgical Residency Training Program, and Chief of the Section of Neurological Surgery at the Sidney and Lois Eskenazi Hospital. Dr. Savage's research has been recognized by the American Association of Neurological Surgeons (AANS), and he has been selected by his peers as a regional Top Doctor. The IUSM Department of Neurological Surgery appointed Dr. Savage to Chair of the Clinical Competency and Program Evaluation Committees. Dr. Savage was selected by his peers to represent IUSM on the Indiana University Purdue University Indianapolis (IUPUI) Hearing Commission and Faculty Council. IUSM appointed Dr. Savage to the Graduate Medical Education Committee for a multiyear term and IU Health leadership selected him to serve on the Clinical Effectiveness Council. At the national and international level, Dr Savage is faculty for the AANS Goodman Oral Board Preparation Course, served as IU Health neurosurgical representative for the Multidisciplinary Team of Distinction recognized by the North American Skull Base Society, functioned as an Unaffiliated Neurologic Consultant for the National Football League, and was visiting professor at the Academic Model Providing Access to Healthcare (AMPATH) Moi Teaching and Referral Hospital in Eldoret, Kenya.

16.     Clinically, Dr. Savage was the most productive neurosurgeon in the IU Department of Neurosurgery at the time of his departure.

17.     Dr. Savage routinely managed some of the most complex patient cases from Indiana and its surrounding states.

17.     Beginning in 2022, Dr. Savage began to explore job opportunities outside of IU Health. Health systems around the country attempted to recruit Dr. Savage.

18.     On or about March 12, 2024, Dr. Savage attended his routine IUSM faculty annual review. During the review, Dr. Savage's supervisor, Dr. Mitesh Shah, informed Dr. Savage that approximately one year earlier, sometime during the first quarter of 2023, a medical resident had submitted an anonymous faculty evaluation of Dr. Savage to the IUSM Graduate Medical Education ("GME") program.

19.     According to Dr. Shah, the medical resident wrote that she or he had had a negative interaction with Dr. Savage in an operating room ("OR") while Dr. Savage was on call.

20.     The medical resident speculated the cause of the negative interaction may have been that Dr. Savage was intoxicated.

21.     Dr. Shah refused to allow Dr. Savage to view the evaluation. Dr. Savage denied the allegation.

22.     Dr. Shah provided Dr. Savage with no explanation as to why Dr. Shah had waited a year to disclose this evaluation to Dr. Savage.

23.     Based on information and belief, prior to the time that resident submitted the uncorroborated, accusatory evaluation of Dr. Savage, the IUSM residents who had participated in the neurological surgery rotation submitted positive evaluations overall of their experiences with Dr. Savage.

24.     Based on information and belief, Dr. Shah met with these residents to encourage them to amend their evaluations to make them more critical of, and negative toward, Dr. Savage.

25.     Based on information and belief, Dr. Shah referred the resident's evaluation of Dr. Savage to IUSM leadership. Dean Mary Dankoski informed Dr. Shah that IUSM would not investigate or pursue the allegation.

26.     Dr. Shah then elected to share the resident's evaluation with Dr. Michele Saysana, who was a member of the IU Health Academic Health Center Medical Staff Leadership Council.

27.     Dr. Shah told Dr. Savage to expect Dr. Saysana to contact Dr. Savage, that his career was in serious jeopardy, that Dr. Saysana would make a "big ask" of Dr. Savage, and that to save his career Dr. Savage would have to do whatever Dr. Saysana requested of him.

28.     Dr. Shah admitted that he did not believe the allegation himself.

29.     On or about March 26, 2024, Dr. Saysana summoned Dr. Savage to a meeting with the Leadership Council to take place the next morning, March 27, 2024.

30.     Dr. Savage informed Dr. Saysana that he was scheduled to perform surgeries that morning and asked whether he should cancel the surgeries to attend the meeting. Dr. Saysana instructed him to proceed with his surgeries as planned and she rescheduled the meeting to March 28, 2024.

31.     On March 28, 2024, Dr. Savage met with Leadership Council representatives Dr. Saysana, Dr. Shah, Dr. Christian Strachan, and Dr. David Stockwell. Also present was Jan Buland.

32.     During the March 28, 2024, meeting, the Leadership Council reiterated that approximately one year earlier, sometime during the first quarter of 2023, a medical resident had submitted an anonymous faculty evaluation alleging to have had a negative interaction with Dr. Savage in an operating room ("OR") while Dr. Savage was on call, and suggesting that the cause of the negative interaction may have been that Dr. Savage was intoxicated.

33.     The Leadership Council elaborated that the resident alleged that Dr. Savage's conduct caused the surgery to be delayed.

34.     The Leadership Council did not identify the hospital at which this event allegedly occurred and did not share with Dr. Savage a copy of the resident evaluation.

35.     The allegation against Dr. Savage in the resident evaluation was uncorroborated, speculative, stale and false.

36.     Under IU Health's policies, if the medical resident (or any other medical professional) had reason to believe that Dr. Savage was intoxicated while providing care in an operating room, the medical resident was required to report that belief immediately to his or her supervisor, manager, or director, who was required to immediately contact the President of the Medical Staff ("President"), the Facility Chief Medical Officer ("Facility CMO"), or another Medical Staff Officer or Medical Staff Leader. IU Health Practitioner Health Policy § VI(1)(B)(i). The President, Facility CMO, or Medical Staff Officer or Leader would then immediately remove Dr. Savage from patient care and arrange for Dr. Savage to be tested to determine whether he was impaired. IU Health Practitioner Health Policy § VI(2)(B).

37.     Neither the medical resident nor any other IU Health staff member made a contemporaneous report that Dr. Savage was, or may have been, intoxicated while providing care in an OR.

38.     Pursuant to IU Health's quality of care procedures, if a physician causes a surgery in the operating room to be delayed, the operating room staff is to submit a report to the IU Health chief of surgery and Operating Room Surgical Committee detailing the circumstances of the delayed surgery.

39.     No report was generated in the first quarter of 2023 indicating that Dr. Savage caused a surgery to be delayed. Nor was Dr. Savage informed by any IU Health staff that he caused a surgery to be delayed.

40.     The Leadership Council acknowledged that it did not receive the resident's allegation through IU Health's normal reporting channels, but rather through the Graduate Medical Education program of IUSM.

41.     The Leadership Council informed Dr. Savage that it had not investigated the allegation and that it did not intend to do so.

42.     Section 3D of the IU Health Practitioner Health Policy provides that, after a report is logged, certain IU Health leadership "shall interview witnesses or others who may have information and gather any other necessary documentation or information to assess the reported concern." Similarly, Section 3C of the Practitioner Health Policy provides that the "Employer will be invited to provide any information that it believes may be relevant to the Employee Practitioner and the concern being reviewed."

43.     If IU Health had followed its policies and investigated, numerous witnesses to each surgery Dr. Savage performed during the first quarter of 2023 would have been available for IU Health to interview.

44.     When Dr. Savage performs a surgery, he is typically assisted by five to eight other medical professionals. Many of those professionals worked with Dr. Savage regularly, such that they were familiar with his habits, mannerisms and ordinary conduct. For that reason, Dr. Savage's colleagues would have been able to detect whether Dr. Savage was acting in a manner that indicated he was or may have been impaired.

8

45. Dr. Savage told the Leadership Council that the allegation was entirely false, and that he had never been impaired while caring for a patient at any time in his career.

46. For approximately one year following the resident's submission of the evaluation, Dr. Savage performed hundreds of surgeries in the OR without any report that he may have been impaired.

47. Similarly, during Dr. Savage's nine-year tenure working at IU Health facilities, no one ever reported that Dr. Savage provided patient care while impaired, other than the anonymous, uncorroborated resident evaluation.

48. At IU Health's request, in May 2023 Dr. Savage applied for privileges and credentials at the Roudebush VA Medical Center ("VA"). As part of the VA's credentialing process, the VA required Dr. Savage to undergo a physical examination and toxicology screening. The VA found Dr. Savage to be fit for duty. IU Health was aware that the VA found Dr. Savage to be fit for duty.

49. The Leadership Council conceded to Dr. Savage that none of its members believed the anonymous allegation in the evaluation to be true.

50. IU Health had no substantiated factual basis to conclude that there was a reasonable likelihood that Dr. Savage was an impaired physician.

51. Nevertheless, the Leadership Council coerced Dr. Savage to undergo an intake evaluation from the Indiana State Medical Association ("ISMA") and to "comply with any recommendation that the ISMA requires."

52. During the meeting, members of the Leadership Council told Dr. Savage that IU Health would suspend his medical staff privileges if he did not agree on the spot to "voluntarily" self-report to the ISMA.

53.     During the meeting, the Leadership Council told Dr. Savage that his career would be ruined if he did not agree to "voluntarily" self-report to the ISMA.

54.     Dr. Savage requested time to consult with an attorney. The Leadership Council informed him that IU Health would suspend his privileges immediately if he left the meeting without agreeing to "voluntarily" self-report to the ISMA.

55.     The Leadership Council told Dr. Savage that if he refused to comply with the Leadership Council's request, the Council would escalate the matter to the IU Health medical executive committee, which would result in automatic suspension of Dr. Savage's privileges and IU Health reporting Dr. Savage to the National Practitioner Data Bank ("NPDB").

56.     The Leadership Council did not inform Dr. Savage of any other procedures to file a grievance or to seek an appeal or review of the Leadership Council's actions, forcing Dr. Savage to participate in an intake evaluation at the ISMA.

57.     Dr. Savage held medical staff privileges at IU Health North, among other IU Health facilities. Under IU Health North's Impaired Medical Staff Policy, IU Health should have referred Dr. Savage to the ISMA only if IU Health officials "believe[d] that there [wa]s a reasonable likelihood that the practitioner [wa]s impaired . . ." and "the reports prove substantial." IU Health Impaired Medical Staff Policy Section D.

58.     To avoid IU Health's threat to suspend his privileges and report him to the NPDB, Dr. Savage concluded he had no choice but to participate in the intake evaluation process at the ISMA and to comply with any recommendation that the ISMA required of him.

59.     To keep IU Health from suspending his privileges, Dr. Savage agreed to be placed on administrative leave, pending his report to the ISMA and completion of any ISMA requirements.

60.     The Leadership Council told Dr. Savage it would not require Dr. Savage to refrain from practicing at other health systems where he had privileges, such as Eskenazi Health and the Roudebush VA Medical Center.

61.     On March 28, 2024, after the meeting, IU Health sent a letter to Dr. Savage, stating that Dr. Savage agreed to "refrain from exercising [his] IU Health AHC medical staff privileges effective immediately." The letter also stated that Dr. Savage's "privileges will be reinstated" upon "notification from the ISMA to the Medical Staff Office."

62.     Dr. Savage participated in the ISMA's intake evaluation process on March 29, 2024.

63.     At the conclusion of its intake evaluation process, the ISMA did not require Dr. Savage to take any further action.

64.     The ISMA does not perform health assessments. For that reason, the ISMA did not determine that Dr. Savage was impaired or otherwise suffered from any health condition.

65.     The ISMA stressed to Dr. Savage that his referral from the IU Health Leadership Counsel was "atypical" because IU Health had conducted no investigation of the allegation against him, the allegation was over a year old, and IU Health had not tested Dr. Savage to evaluate whether he was impaired. ISMA recommended Dr. Savage consider retaining legal counsel and offered to provide him with names of attorneys whom ISMA recommended.

66.     The ISMA informed Dr. Savage that he had the option to voluntarily obtain a comprehensive health assessment from a third-party, for-profit inpatient treatment facility if Dr. Savaged believed he had an alcohol problem or other health issue.

67.     The ISMA did not require Dr. Savage to obtain a health assessment from a third-party treatment facility.

68.     The ISMA made no determinations regarding Dr. Savage's ability to practice safely or his fitness for duty.

69.     The ISMA did not prevent Dr. Savage from returning to the practice of medicine without a health assessment from a third-party treatment facility.

70.     The ISMA did not report Dr. Savage to the Indiana Medical Licensing Board. Under Indiana law, the ISMA would have been required to report Dr. Savage to the Indiana Medical Licensing Board if Dr. Savage: (1) was not competent to continue practice; or (2) presented a danger to himself, his patients, or the general public. Ind. Code § 34-30-15.5-8(a). The ISMA made no such determinations.

71.     Dr. Savage satisfied all the Leadership Council's requests, as articulated in its letter to Dr. Savage of March 28, 2024.

72.     On April 23, 2024, Dr. Savage emailed the Leadership Council to report that ISMA imposed no requirements on him and to confirm that he had satisfied the Leadership Council's requests.

73.     On April 25, 2024, the Leadership Council sent a letter to Dr. Savage, disputing that he had fulfilled the ISMA's requirements or recommendations because Dr. Savage had not received a third-party health assessment.

74.     On May 1, 2024, Dr. Savage resigned his employment with IUHP and his faculty appointment with IUSM to pursue other employment offers. Dr. Savage also voluntarily withdrew his medical staff privileges and credentials at all relevant facilities affiliated with IU Health.

75.     Dr. Savage resigned as a member of the medical staff in good standing and without any disciplinary action against his privileges.

76.     IU Health never initiated an investigation against Dr. Savage's privileges.

77.     Nevertheless, after Dr. Savage resigned, IU Health placed a "flag" on Dr. Savage's privileges file.

78.     Based on information and belief, IU Health has no written policies that define the conditions for IU Health to place a "flag" on a licensed provider's privileges file.

79.     No state or federal statute or regulation, and no accreditation standard, required IU Health to place a "flag" on Dr. Savage's privileges file.

80.     Prior to his resignation from IU Health, Dr. Savage had received an employment offer from Texas Health Medical Group ("Texas Health."). Dr. Savage signed a Letter of Intent with Texas Health on May 2, 2024, and a Physician Employment Agreement with Texas Health on June 20, 2024.

81.     Dr. Savage was scheduled to commence employment with Texas Health on October 1, 2024.

82.     Dr. Savage's employment with Texas Health was conditioned on, among other things, Dr. Savage's obtaining and maintaining a Texas medical license, and obtaining and maintaining medical staff privileges at Texas Health Harris Methodist Hospital Fort Worth ("Texas Health").

83.     Based on information and belief, IU Health knew that Dr. Savage had obtained an employment offer from and had signed a letter of intent with Texas Health.

84.     Dr. Savage disclosed to IU Health that he had obtained an employment offer from Texas Health and that IU Health would receive credentialing inquiries from Texas Health and licensing inquiries from the Texas Medical Board.

85.     Dr. Savage also applied to other medical providers to perform *locum tenens* work between May 1, 2024, and October 1, 2024 (his anticipated start date with Texas Health). Dr.

13

Savage received an offer to perform *locum tenens* work from CompHealth in Casper, Wyoming, which he accepted. CompHealth's offer to Dr. Savage to perform *locum tenens* work was conditioned on his obtaining clinical and medical staff privileges and state medical licenses prior to commencing work.

86.    Dr. Savage applied for *locum tenens* work with other institutions and staffing agencies, including Goldfish Medical Staffing, Barton Associates, All Star Locums, SUMO locum staffing, Hayes Locums, VieMed Capital Healthcare Staffing, and locumtenens.com.

87.    Based on information and belief, IU Health knew that Dr. Savage was seeking to perform *locum tenens* work and had received an offer to perform *locum tenens* work after his resignation.

88.    Dr. Savage disclosed to IU Health that Dr. Savage had applied for *locum tenens* work, and received offers to perform *locum tenens* work at CompHealth.

89.    Dr. Savage signed contracts (on behalf of and as the sole owner of Sequoia Brain & Spine, Inc.) under which he agreed to provide medical services for Adventist Health and Common Spirit Health in Bakersfield, California.

90.    Based on information and belief, IU Health knew that Dr. Savage had agreements with Adventist Health and Common Spirit Health to provide medical services.

91.    Dr. Savage disclosed to IU Health that IU Health would receive credentialing inquiries from Adventist Health and Common Spirit Health and licensing inquiries from the Medical Board of California.

92.    Beginning after May 1, 2024, and continuing to the present, in response to inquiries from the Texas Medical Board, Texas Health Hospital, CompHealth, Adventist Health, Common

14

Spirit Health, the Medical Board of California, and other institutions, IU Health provided damaging and misleading information about Dr. Savage.

93.     Beginning after May 1, 2024, and continuing to the present, IU Health unreasonably delayed responding to inquiries relating to Dr. Savage's applications for privileges and licenses.

94.     In response to licensing or credentialing inquiries, IU Health should have confirmed, in a timely manner and without qualification, that Dr. Savage was at all times a member in good standing with the medical staff and that his privileges were never the subject of an investigation, denied, suspended, revoked, placed on probation or subject to any disciplinary action.

95.     Upon information and belief, based on the unwarranted "flag" that IU Health elected to place on Dr. Savage's privileges file, IU Health responded to inquiries about Dr. Savage by providing information that was misleading and damaging to Dr. Savage.

96.     For example, IU Health responded to a licensing inquiry by stating that Dr. Savage "may have had actions at IU Health related to health issues and ensuring [Dr. Savage] could practice safely and competently."

97.     IU Health later amended its "Statement regarding Dr. Savage's Privileges and Medical Staff Membership." IU Health's amended statement includes the following:

> On or about March 28, 2024, the IU Health AHC Leadership Council (Council) met with Dr. Savage to have a collegial discussion regarding an issue reported to the Medical Staff Office. At that time Dr. Savage agreed to refrain from exercising his medical staff privileges immediately. He agreed to undergo an intake evaluation from the Indiana State Medical Association (ISMA). Upon information and belief, ISMA made certain recommendations.

98.     The Texas Medical Board did not grant Dr. Savage's application for licensure based on the information IU Health provided on or before October 1, 2024. Dr. Savage was not able to

commence employment with Texas Health on October 1, 2024. Dr. Savage's Physician Employment Agreement with Texas Health has been terminated.

99.    Dr. Savage did not obtain the necessary approvals for credentialing and privileges to perform *locum tenens* work for CompHealth or any other institution or agency, based upon the information IU Health communicated in response to credentialing inquiries.

100.    Dr. Savage eventually obtained the necessary approvals for credentialing and privileges, and a California medical license, permitting him to perform work for Adventist Health and Common Spirit Health. Nevertheless, the substance of the information IU Health provided to Adventist Health and Common Spirit Health, and its delay in providing the information to Adventist Health and Common Spirit Health, unreasonably delayed Dr. Savage's commencement of his employment under his contracts with Adventist Health and Common Spirit Health.

101.    Dr. Savage's ability to obtain licenses or credentials will continue to be wrongly compromised, and Dr. Savage's reputation will continue to be damaged, unless and until IU Health removes the "flag" on Dr. Savage's credentialing file, and responds to all future inquiries accurately and without qualification, that Dr. Savage was at all times a member in good standing with the medical staff and that his privileges were never the subject of an investigation, denied, suspended, revoked, placed on probation or subject to any disciplinary action.

102.    Dr. Savage's reputation has been damaged, and will continue to be damaged, by IU Health's actions, which have caused and are causing Dr. Savage irreparable harm.

103.    IU Health's actions that serve to prevent or compromise Dr. Savage's ability to obtain employment as a neurosurgeon have caused, and are causing, Dr. Savage irreparable harm.

104.    Dr. Savage has suffered emotional distress, mental anguish, pain and suffering, and irreparable harm, as a result of IU Health's actions.

105.    Dr. Savage lacks an adequate remedy at law for IU Health's actions in damaging, and continuing to damage, his reputation and in preventing him, in the past and in the future, from obtaining state licenses, privileges and credentials to practice medicine at the site or sites of his choice.

106.    The harm Dr. Savage faces outweighs the potential harm to IU Health would suffer if IU Health was enjoined from providing damaging and misleading information about Dr. Savage in response to licensing and credentialing inquiries.

107.    The public interest will be served by IU Health's no longer providing damaging and misleading information about Dr. Savage in response to licensing and credentialing inquiries and IU Health's no longer providing information that serves to prevent or compromise Dr. Savage's ability to obtain employment as a neurosurgeon and to care for ill patients.

### III.    LEGAL ALLEGATIONS

#### Count I: Tortious Interference with Contract

108.    Dr. Savage incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

109.    Dr. Savage and Texas Health were parties to a written contract of employment.

110.    IU Health knew about Dr. Savage's employment contract with Texas Health when it received credentialing inquiries from Texas Health Hospital and licensing inquiries from the Texas Medical Board.

111.    Sequoia Brain & Spine, Inc. and Adventist Health are parties to a written contract under which Dr. Savage performs medical services and receives compensation for those services.

112.    Sequoia Brain & Spine, Inc. and Common Spirit Health are parties to a written contract under which Dr. Savage performs medical services and receives compensation for those services.

113.    IU Health knew about Dr. Savage's agreements with Adventist Health and Common Spirit Health when it received credentialing inquiries from Adventist Health and Common Spirit Health and licensing inquiries from the Medical Board of California.

114.    IU Health intentionally interfered with Dr. Savage's contracts.

115.    The contract between Texas Health and Dr. Savage terminated as a result of IU Health's acts of interference.

116.    IU Health's acts of interference were not justified.

117.    IU Health's acts of interference were intentional and had no legitimate business purpose.

118.    IU Health's acts of interference were malicious and exclusively directed to the injury and damage of Dr. Savage.

119.    Dr. Savage has suffered damages as a result of IU Health's interference with his contractual relationships, including, but not limited to, lost compensation, wages, and benefits, out of pocket expenses, emotional distress, and damage to his professional reputation.

**Count II:        Tortious Interference with Employment Relationships**

120.    Dr. Savage incorporates all other paragraphs of this Complaint as if fully set forth here.

121.    Dr. Savage had an employment relationship (or a prospective employment relationship) with Texas Health.

122.    Dr. Savage had employment relationships (or prospective employment relationships) with CompHealth and multiple other medical providers for the purpose of performing *locum tenens* work.

123.    Dr. Savage has employment relationships with Adventist Health and Common Spirit Health.

124.    IU Health knew about Dr. Savage's employment relationships when it received credentialing and licensing inquiries associated with Dr. Savage's actual and prospective employment opportunities.

125.    IU Health intentionally interfered with Dr. Savage's employment relationships.

126.    IU Health harmed Dr. Savage's employment relationships with Texas Health, Common Spirit Health, Adventist Health and other actual or prospective employers through its acts of interference.

127.    IU Health's acts of interference were not justified.

127.    IU Health's acts of interference were intentional and had no legitimate business purpose.

129.    IU Health's acts were malicious and exclusively directed to the injury and damage of Dr. Savage.

130.    Dr. Savage has suffered damages as a result of IU Health's interference with his employment relationships, including, but not limited to, lost compensation, wages, and benefits, out of pocket expenses, emotional distress, and damage to his professional reputation.

## IV.    RELIEF REQUESTED

WHEREFORE, Dr. Savage requests the following relief from IU Health:

1.    Compensatory damages, including but not limited to lost earnings, lost benefits, loss of future earning capacity, out of pocket expenses, emotional distress damages, and reputational injury damages;

2.  An injunction against IU Health ordering IU Health to remove the flag from Dr. Savage's privileges file; and ordering IU Health, in response to licensing or credentialing inquiries, to confirm, in a timely manner and without qualification, that Dr. Savage was at all times a member in good standing with the medical staff and that his privileges were never the subject of an investigation, denied, suspended, revoked, placed on probation or subject to any disciplinary action.

3.  Pre-judgment and post-judgment interest;

4.  All costs and reasonable attorney's fees incurred in this litigation; and

5.  All other legal and/or equitable relief to which Dr. Savage is entitled.

Respectfully submitted,

*/s/ Matthew R. Gutwein*
Matthew R. Gutwein (#16414-49)
Alexander J. Pantos (# 36925-53)
DeLaney & DeLaney LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel: (317) 920-0400

Attorneys for Jesse Savage, M.D., Ph.D.

## JURY DEMAND

Plaintiff Jesse Savage, M.D., Ph.D., by counsel, hereby demands a trial by jury on all issues

so triable.

Respectfully submitted,

*/s/ Matthew R. Gutwein*
Matthew R. Gutwein (#16414-49)
Alexander J. Pantos (# 36925-53)
DeLaney & DeLaney LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel: (317) 920-0400

21

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO: |

| | | |
|---|---|---|
| JESSE J. SAVAGE, M.D., Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **SUMMONS** |
| | ) | |
| INDIANA UNIVERSITY | ) | |
| HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MARION COUNTY COURTS
**SEAL**
INDIANA

TO DEFENDANT:  Indiana University Health, Inc.
c/o Registered Agent
Erin R. Lewis
340 West 10th Street
Indianapolis, IN 46202

You are hereby notified that you have been sued by the persons named as plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by plaintiff. Such Answer must be made in court.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Dated: _____5/22/2025_____

_____
Clerk, Marion Superior Court

**The following manner of service of summons is hereby designated.**

__X__    Registered or certified mail

Matthew R. Gutwein (#16414-49)          Court Address:
Alexander J. Pantos (#36925-53)          Marion County Circuit and Superior Courts
DeLaney & DeLaney LLC                    675 Justice Way
3646 N. Washington Blvd.                 Indianapolis, IN 46203
Indianapolis, IN 46205                   Phone: 317.327.4740
Phone: (317) 920-0400
Attorneys for Plaintiff

### *SHERIFF'S RETURN ON SERVICE OF SUMMONS*

I hereby certify that I have served this summons on the _____ day of _____, 2025:

(1)  By delivering a copy of the Summons and a copy of the Complaint to defendant, _____.

(2)  By leaving a copy of the Summons and a copy of the Complaint at _____ which is the dwelling place or usual place of abode of _____
and by mailing a copy of said summons to said defendant at the above address.

(3)  Other Service or Remarks:  _____
_____
_____

_____
Sheriff

By: _____
        Deputy

### *CLERK'S CERTIFICATE OF MAILING*

I hereby certify that on the _____ day of _____, 2025, I mailed a copy of this Summons and a copy of the Complaint to the defendant, _____, by _____ mail, requesting a return receipt, at the address furnished by the plaintiff.

_____
Clerk, Marion Superior Court

Dated:  _____, 2025.          By: _____
                                                                                  Deputy

### *RETURN ON SERVICE OF SUMMONS BY MAIL*

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____ was accepted by the defendant on the _____ day of _____, 2025. I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint was returned not accepted on the _____ day of _____, 2025.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____ was accepted by _____ on behalf of said defendant on the _____ day of _____, 2025.

_____
Clerk, Marion Superior Court

By: _____
        Deputy

| Matthew R. Gutwein<br>Alexander J. Pantos<br>DeLaney & DeLaney LLC<br>3646 Washington Blvd.<br>Indianapolis, IN 46205 | SHERIFF'S COSTS | COURT NO. | **SUMMONS** | INDIANA UNIVERSITY HEALTH, INC.,<br>Defendant. | JESSE J. SAVAGE, M.D., PH.D.,<br>Plaintiff,<br>v. | Cause No.<br><br>Room No. |

Marion Superior Court 1

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO: |

JESSE J. SAVAGE, M.D., Ph.D.,           )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )
                                        )
INDIANA UNIVERSITY                      )
HEALTH, INC.,                           )
                                        )
        Defendant.                      )

## <u>E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE</u>

1. The party on whose behalf this form is being filed is:
   Initiating __X__        Responding _____        Intervening ____ ; and
   the undersigned attorney and all attorneys listed on this form now appear in this case for
   the following parties:

   Name of party: Jesse J. Savage, M.D., Ph.D.
   Address of party   <u>Contact through counsel</u>
   Telephone # of party <u>Contact through counsel</u>

2. Attorney information for service as required by Trial Rule 5(B)(2)

   Matthew R. Gutwein                    Alexander J. Pantos
   Attorney No. 16414-49                 Attorney No. 36925-53
   DELANEY & DELANEY LLC                 DELANEY & DELANEY LLC
   3646 N. Washington Blvd.              3646 N. Washington Blvd.
   Indianapolis, IN 46205                Indianapolis, IN 46205
   Phone: (317) 920-0400                 Phone: (317) 920-0400
   Fax: (317) 920-0404                   Fax: (317) 920-0404
   mgutwein@delaneylaw.net               apantos@delaneylaw.net

**IMPORTANT**:  Each attorney specified on this appearance:

    (a)    certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

    (b)    **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

    (c)    understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3.    This is a <u>Commercial Court Eligible (**CE**)</u> case type as defined in administrative Rule 8(B)(3).

4.    This case involves child support issues. Yes _____ No __**x**__

5.    This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes _____ No __**x**__

6.    This case involves a petition for involuntary commitment.  Yes _____ No __**x**__

7.    There are related cases: Yes ____ No ___**x**___ *(If yes, list on continuation page.)*

8.    Additional information required by local rule: **n/a**

9.    There are other party members: Yes _____ No **x**___ *(If yes, list on continuation page.)*

10.    This form has been served on all other parties and Certificate of Service is attached: Yes__ No _X__

Respectfully submitted,

*/s/ Matthew R. Gutwein*
Matthew R. Gutwein (#16414-49)
Alexander J. Pantos (#36925-53)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel: (317) 920-0400

*Attorneys for Plaintiff*

3

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO: |

| | |
|---|---|
| JESSE J. SAVAGE, M.D., Ph.D., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| INDIANA UNIVERSITY | ) |
| HEALTH, INC., | ) |
| | ) |
|     Defendant. | ) |

## <u>NOTICE IDENTIFYING COMMERCIAL COURT DOCKET CASE</u>

The undersigned states that this case is a Commercial Court Docket Case eligible for assignment to the Commercial Court Docket pursuant to Rule 2(A)(7) of the Indiana Commercial Court Rules.

Pursuant to Rule 4 of the Commercial Court Rules, the undersigned requests that the Clerk of Court assign this case to the Commercial Court Docket.

Respectfully submitted,

*/s/ Matthew R. Gutwein*

Matthew R. Gutwein (#16414-49)
Alexander J. Pantos (#36925-53)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel: (317) 920-0400

*Attorneys for Plaintiff*

# USPS Tracking®

**Tracking Number:**                                                                        Remove ✕

## 9589071052701847987964

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 1:18 pm on May 27, 2025 in INDIANAPOLIS, IN 46202.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

**Delivered**
**Delivered, Front Desk/Reception/Mail Room**
INDIANAPOLIS, IN 46202
May 27, 2025, 1:18 pm

**In Transit to Next Facility**
May 25, 2025

**Arrived at USPS Regional Facility**
INDIANAPOLIS IN DISTRIBUTION CENTER
May 24, 2025, 7:11 pm

**Departed Post Office**
INDIANAPOLIS, IN 46220
May 23, 2025, 6:31 pm

**USPS in possession of item**
INDIANAPOLIS, IN 46220
May 23, 2025, 1:03 pm

Feedback

● **Hide Tracking History**

**What Do USPS Tracking Statuses Mean?** (https://faq.usps.com/s/article/Where-is-my-package)

---

**Text & Email Updates** ⌄

---

**USPS Tracking Plus®** ⌄

---

**Product Information** ⌄

**See Less** ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO: 49D01-2505-CE-024396 |

| | |
|---|---|
| JESSE J. SAVAGE, M.D., Ph.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INDIANA UNIVERSITY | ) |
| HEALTH, INC., | ) |
| | ) |
| Defendant. | ) |

## MOTION FOR INITIAL CASE MANAGEMENT CONFERENCE

Plaintiff, Jesse J. Savage ("Savage"), by counsel, respectfully requests the Court set an

Initial Case Management Conference. In support of its motion, Plaintiff states as follows:

1.    Plaintiff filed a Complaint and Demand for Jury Trial May 22, 2025.

2.    Plaintiff contemporaneously filed a Notice Identifying Commercial Court.

3.    The case has been provisionally assigned to the Commercial Court docket.

4.    Defendant was served with the Summons and Complaint May 27, 2025.

5.    Defendant's Answer deadline is June 19, 2025.

6.    The Commercial Court Handbook Section 2.1 provides that the Court should hold

an Initial Case Management Conference as early in the case as is practical.

7.    A proposed Order has been tendered with this motion.

WHEREFORE, Plaintiff respectfully requests the Court schedule an Initial Case

Management Conference at the Court's earliest convenience.

Respectfully submitted,

*/s/ Matthew R. Gutwein*
Matthew R. Gutwein (#16414-49)
Alexander J. Pantos (#36925-53)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel: (317) 920-0400

*Attorneys for Plaintiff*

F I L E D
June 13, 2025
CLERK OF THE COURT
MARION COUNTY
SF

# *INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO: 49D01-2505-CE-024396 |

| | |
|---|---|
| JESSE J. SAVAGE, M.D., Ph.D., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| INDIANA UNIVERSITY | ) |
| HEALTH, INC., | ) |
| | ) |
|     Defendant. | ) |

## ORDER FOR INITIAL CASE MANAGEMENT CONFERENCE

An initial case management conference is set for _____ July 10 _____ at _11:30AM_ via Webex. Court will send link and make available on MyCase.

### Interim Orders

Counsel who are managing the litigation, and who are able to make decisions regarding discovery and briefing of legal issues, must attend the initial case management conference in person.

Before the initial case management conference, the court orders counsel for all parties to confer in person or by telephone (no fewer than five days before the conference) and be prepared to discuss the issues to be set out in the initial joint case management proposed order.

Counsel for plaintiff must prepare a joint Initial Case Management Proposed Order to be filed three court days prior to the initial case management conference. The joint Initial Case Management Proposed Order is to include the following, if applicable in this case:

1. A list of all parties and counsel;

2. A statement as to whether additional parties are likely to be added and a proposed date by which all parties must be served;

3. An outline of the claims and cross-claims, and the parties against whom each claim is asserted, and the relief sought against each party;

4. Service lists and procedures for efficient service filing;

5. Whether any issues of jurisdiction or venue exist that might affect this court's ability to proceed with this case;

6. Applicability and enforceability of arbitration clauses;

7. A list of all related litigation pending in other courts, a brief description of any such litigation, and a statement as to whether any additional related litigation is anticipated;

8. A description of core factual and legal issues;

9. A description of legal issues that, if decided by the court, may simplify or further resolution of the case;

10. Preparation of a preliminary discovery plan, and a discussion of whether discovery should be conducted in phases or limited; and if so, the order of phasing or types of limitations on discovery;

11. Whether particular documents relevant to the case can be exchanged by agreement of the parties. Whether information concerning relevant witnesses can be exchanged by agreement of the parties.

12. The parties' thoughts on the timing of ADR and how ADR might be integrated into the course of the litigation;

13. A proposed discovery cut-off date; and

14. A target date and a time estimate for trial. To the extent the parties are unable to agree on the matters to be addressed in the joint Initial Case Management Proposed Order, the positions of each party or of various parties shall be set forth separately and attached to the joint proposed order.

Dated: _____6/13/2025_____

THE HON. CHRISTINA KLINEMAN
INDIANA COMMERCIAL COURT

Distribution to:

Counsel by Court E-Notice

Filed: 6/13/2025 1:49 PM
Clerk
Marion County, Indiana

STATE OF INDIANA          )         IN THE MARION SUPERIOR COURT #1
                          ) SS:
COUNTY OF MARION          )         CAUSE NO.:  49D01-2505-CE-024396

JESSE J. SAVAGE, M.D., Ph.D.,        )
                                     )
                Plaintiff,           )
                                     )
        vs.                          )
                                     )
INDIANA UNIVERSITY HEALTH, INC.      )
                                     )
                                     )
                Defendant.           )

## APPEARANCE BY ATTORNEY IN CIVIL CASE

Party Classification**:** Initiating: ☐        Responding: ☒        Intervening: ☐

1.      The undersigned attorney and all attorneys listed on this form now appear in this case for the following party member(s): **Defendant, Indiana University Health, Inc.**

2.      Applicable attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

      Name: Bonnie L. Martin                    Atty: Number: 20248-18
      OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.
      300 N. Meridian Street, Suite 2700
      Indianapolis, IN 46204                     Telephone:  (317) 916-1300
                                                Facsimile:  (317) 916-9076
                                                *bonnie.martin@ogletree.com*

      Name: David R. Kuhnz                       Atty: Number: 29990-49
      OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.
      300 N. Meridian Street, Suite 2700
      Indianapolis, IN 46204                     Telephone:  (317) 916-1300
                                                Facsimile:  (317) 916-9076
                                                *david.kuhnz@ogletree.com*

3.      There are other party members:        Yes ☐ No ☒ (*If yes, list on continuation page.*)

4.      If first initiating party filing this case, the clerk is requested to assign this case the following Case Type under Administrative Rule 8(b)(3):
        Not Applicable

5.      I will accept service by FAX at the above noted number: Yes ☐ No ☒

6.      This case involves support issues: Yes ☐    No ☒ (*If yes, supply social security numbers for all family members on continuation page.*)

7.      There are related cases:  Yes ☐       No ☒

8.      This form has been served on all other parties.  Certificate of Service is attached: Yes ☒ No ☐

9.      Any additional information required by local rule: Not Applicable

                          Respectfully submitted,

                          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


                           *s/ Bonnie L. Martin*
                          Bonnie L. Martin, Attorney No. 20248-18
                          David R. Kuhnz, Attorney No. 29990-49
                          300 N. Meridian Street, Suite 2700
                          Indianapolis, IN  46204
                          Telephone:  317.916.1300
                          Facsimile:  317.916.9076
                          Email: *bonnie.martin@ogletree.com*
                                   *David.kuhnz@ogletree.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2025, a copy of the foregoing *Appearance of Attorney* was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Matthew R. Gutwein
Alexander J. Pantos
DeLaney & DeLaney LLC
3646 Washington Blvd.
Indianapolis, IN 46205
mgutwein@delaneylaw.net
apantos@delaneylaw.net

*s/ Bonnie L. Martin*

32829463.1

STATE OF INDIANA       )      IN THE MARION SUPERIOR COURT #1
                                 ) SS:
COUNTY OF MARION       )      CAUSE NO.:  49D01-2505-CE-024396

JESSE J. SAVAGE, M.D., Ph.D.,    )
                                 )
               Plaintiff,      )
                                 )
               vs.           )
                                 )
INDIANA UNIVERSITY HEALTH, INC.  )
                                 )
                                 )
            Defendant.    )
                                 )
                                 )

## DEFENDANT'S NOTICE OF INITIAL ENLARGEMENT OF TIME

Pursuant to Marion County LR 49-TR5 Rule 203(D), Defendant, Indiana University Health, Inc., by counsel, submits this Notice of Initial Enlargement of Time to respond to Plaintiff's complaint.

The Defendant's original deadline is June 16, 2025.  Pursuant to the requested 30-day enlargement, the Defendant's new response deadline is July 16, 2025.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

 _s/ Bonnie L. Martin_
Bonnie L. Martin, Attorney No. 20248-18
David R. Kuhnz, Attorney No. 29990-49
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone:  317.916.1300
Facsimile:  317.916.9076
Email*:* bonnie.martin@ogletree.com
      David.kuhnz@ogletree.com

## CERTIFICATE OF SERVICE

I certify that on June 13, 2025, I electronically filed the foregoing document using the Indiana E-Filing System (IEFS).  I also certify that on June 13, 2025, the foregoing document was served upon the following person via IEFS:

Matthew R. Gutwein
Alexander J. Pantos
DeLaney & DeLaney LLC
3646 Washington Blvd.
Indianapolis, IN 46205
mgutwein@delaneylaw.net
apantos@delaneylaw.net


*s/  Bonnie L. Martin*

Bonnie L. Martin, Esq.
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone:  317.916.1300
Facsimile:  317.916.9076

90537337.v1-OGLETREE